UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITEDHEALTH GROUP INCORPORATED, a
Minnesota Corporation and UNITED HEALTHCARE
SERVICES, INC., a Minnesota Corporation,

                    Plaintiffs,

v.

GREGG D. MACDONALD, and WELLCARE HEALTH
PLANS, INC., a Delaware Corporation,

                    Defendants.

_____/

Case No.: _____

6:07-cv-896-ORL-22KRS

      Plaintiffs, UnitedHealth Group Incorporated and United HealthCare Services, Inc.

(collectively, "UHG"), through its attorneys Weil, Gotshal & Manges LLP, for its Complaint

against Defendants, allege upon knowledge as to itself and its own actions and upon information

and belief as to all other matters, as follows:

## NATURE OF THE ACTION

      1.      UHG brings this action to enforce the contractual promises of one of its

highly-compensated former executives, safeguard UHG's confidential, proprietary and trade

secret information, prevent unfair competition and irreparable injury to UHG's business interests

and protect the goodwill of its customers and network providers.

      2.      UHG employed defendant Gregg D. MacDonald ("Mr. MacDonald")

since January 2003 as Vice President, Network Management for the Orlando/Jacksonville

market for the Southeast region of the UnitedHealth Network ("UHN") business of UHG.  In

exchange for his agreement not to compete and to protect UHG's competitively-sensitive

information, UHG granted Mr. MacDonald stock options from which he has received over

$170,000 in gains to date.  Mr. MacDonald currently holds vested and unexercised options on over 5,000 shares of UHG stock with a current value of more than $70,000.

3.      Despite being bound to multiple covenants not to compete for a period of one year following the termination of his employment, as well as multiple agreements that he would safeguard confidential, proprietary and trade secret information, Mr. MacDonald informed UHG on April 23, 2007 that he intended to become employed by WellCare Health Plans, Inc. or one of its affiliates (collectively "WellCare") immediately following the termination of his employment with UHG in a high-level strategic position similar to the position Mr. MacDonald held at UHG.  WellCare is a direct competitor of UHG, and Mr. MacDonald cannot help but unfairly leverage his use of unique knowledge and specialized skills derived from his position at UHG to benefit WellCare.  As such, Mr. MacDonald has repudiated his agreements not to compete, and has threatened to breach his contractual, common law, and fiduciary obligations to UHG.

## PARTIES

4.      Plaintiff UnitedHealth Group Incorporated is a corporation duly incorporated and existing under the laws of the State of Minnesota with its principal place of business located in Minnesota.  UHG administers its stock option compensation program, specifically issuing stock option awards and generation of grant certificates, through personnel who work in Minnesota.

5.      Plaintiff United HealthCare Services, Inc. is a corporation duly incorporated and existing under the laws of the State of Minnesota with its principal place of business located in Minnesota.  United HealthCare Services, Inc. is a wholly owned subsidiary of

UnitedHealth Group Incorporated and is the employing entity for UnitedHealth Group
Incorporated personnel.

6.     Defendant Mr. MacDonald is a resident of the State of Florida, residing at
1063 Henley Downs Place, Heathrow, FL 32746.

7.     Defendant WellCare Health Plans, Inc. is a corporation incorporated and
existing under the laws of the state of Delaware with its principal place of business located in
Florida.

## JURISDICTION AND VENUE

8.     This action is commenced pursuant to Rule 57 of the Federal Rules of
Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

9.     This Court has subject matter jurisdiction over the claims asserted herein
pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the
amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, as
further described below, a substantial part of the events and omissions giving rise to UHG's
claims herein occurred in this district.

## FACTUAL ALLEGATIONS

11.     UHG is a diversified health and well-being company, serving
approximately 70 million Americans as of December 31, 2006.  UHG conducts its business
primarily through operating divisions in the various business segments, including Health Care
Services, which is comprised of the UnitedHealthcare, Ovations and AmeriChoice businesses.
Ovations provides health and well-being services for individuals age 50 and older, offering
Medicare Supplement and Medicare Advantage coverage and prescription discount cards, as
well as disease management and chronic care capabilities.  AmeriChoice provides network

health and well-being services to state Medicaid, Children's Health Insurance Program, and other government sponsored health care programs and the beneficiaries of those programs.

12.     All of UHG's business segments provide customers with access to comprehensive health and well-being services through a network platform consisting of physicians, care professionals, hospitals, outpatient facilities and pharmacies across the United States.  UHG's network of health care providers is the core of its business, UHG's biggest asset, and one of the primary drivers that distinguishes UHG from its competition.  The UHN organization is charged with establishing relationships with health care providers nationwide and then managing that network to ensure that UHG customers receive quality and cost effective healthcare services.

### A.     Mr. MacDonald's Employment with UHG.

13.     Mr. MacDonald was employed by UHG from January 2003 until May 10, 2007 in the position of Vice President, Network Management for the Orlando/Jacksonville market.

14.     In each year from 2003 through 2006, UHG awarded Mr. MacDonald stock options or stock appreciation rights.  UHG granted those stock options or stock appreciation rights pursuant to grant certificates (the "Option Certificates"), which it issued pursuant to the UnitedHealth Group Incorporated 2002 Stock Incentive Plan (the "Plan").  True and correct copies of the Option Certificates are attached hereto as Composite Exhibit "A."  A true and correct copy of the Plan is attached hereto as Exhibit "B."

15.     Mr. MacDonald was a high-level executive within the UHN organization and has unique expertise, which he gained from the confidential, proprietary and trade secret information he received from, while working at, and being paid by, UHG.  In his position as

Vice President, Network Management for the Orlando/Jacksonville market, Mr. MacDonald was responsible for managing all aspects of UHG's network in the Orlando/Jacksonville area. Specifically, Mr. MacDonald was responsible for and participated in designing and implementing network and geography-specific strategy for the Southeast region, developing and managing relationships with hospitals and physician groups, and negotiating, finalizing and implementing pricing arrangements and contracts with provider groups, hospital systems, and ancillary providers. In addition, Mr. MacDonald led the Southeast region's network development and remediation (*i.e.,* optimizing the economics and contract terms of a provider relationship) strategies for UHG's Ovations and AmeriChoice divisions. Ovation's Secure Horizons business unit competes directly with WellCare's Medicare Advantage business and AmeriChoice competes directly with WellCare in the Medicaid market, including but not limited to Orlando and other parts of Florida.

**B.      Mr. MacDonald Is In Possession of Substantial and Intimate Knowledge of UHG's and UHN's Proprietary, Confidential and Trade Secret Information.**

16.      Mr. MacDonald's position provided him with substantial and intimate knowledge of UHG's and UHN's trade secrets, business methods, strategies and customer relationships and preferences.

17.      Moreover, Mr. MacDonald had access to and intimate knowledge of the proprietary and confidential information of the Ovations and AmeriChoice business segments of UHG. In particular, UHG entrusted Mr. MacDonald with current, confidential and proprietary information and trade secrets, including, without limitation, UHG's:

> (i)      network development and reimbursement strategies;
>
> (ii)     provider discount and network competitiveness data, marketing and business strategies;
>
> (iii)    financial and pricing information;

      (iv)    network provider lists and information, including the terms, conditions and durations of existing agreements with physician groups and hospitals, the nature and status of the negotiations regarding such agreements, and sensitive information relating to the relationships necessary to complete those agreements;

      (v)    supplier and vendor lists and information; and

      (vi)    economic and business terms and strategies with respect to the entire UHG delivery system, which encompasses both service issues and global business strategies.

18.    UHG also provided Mr. MacDonald with information regarding potential providers for the network managed by UHN, including particular physician groups, hospitals, and hospital systems upon which UHN is focusing, as well as UHG's competitive strategy to market the UHG brand against its key competitors, particularly including WellCare.  Likewise, Mr. MacDonald knows UHG's strategy to retain its current customers and network providers so that they do not leave UHG or UHN in favor of contracting with WellCare.

19.    Through his expanding role of leading the network development and remediation strategies for AmeriChoice and Ovations, Mr. MacDonald also was privy to information concerning the long-term business strategies of AmeriChoice and Ovations in Florida and throughout the Southeast, as well as each division's hospital, physician and other provider network development strategy (including the identity of providers each division intends to pursue to include in its network) and timeline, and each division's network remediation strategy and timeline.  Mr. MacDonald also has knowledge of the proprietary financial statements and projections for the AmeriChoice division and was involved in modifying the financial model used by AmeriChoice to assess opportunities for continued growth in the Southeast region.

20.    The sources and forms of information identified in the foregoing paragraphs, which Mr. MacDonald had access to, received, and had responsibility for, constitute

the confidential and proprietary information and trade secrets of UHG.  UHG has expended

significant resources in developing that information, as well as garnering the goodwill of its

customers and network providers who contract with UHN to provide health care services to

UHG members.  UHG derives independent economic value from this information because it is

not generally known to competitors, including WellCare.  Disclosure of this information to

UHG's competitors would be detrimental to UHG's business because it would provide those

competitors with proprietary and non-public information regarding the UHG provider network

that UHN manages.  In a competitor's hands, such information would allow the competitor to

anticipate and counteract UHG's actions in the marketplace, as well as build a strategy to target

the physician groups and hospitals that comprise UHG's network.

21.     Armed with that knowledge, UHG's competitors would be in a position to

undercut UHG's relationships and negotiate superior contracts with the physician groups and

hospitals that comprise UHG's network.  This would place UHG's competitors, including

WellCare, at a competitive advantage because UHG's network is the core of its business and one

of its most valuable assets.

22.     Disclosure of the confidential and proprietary information and trade

secrets Mr. MacDonald has obtained as a result of his position at UHG, and in reliance on the

restrictive covenants and confidentiality obligations contained in the Option Certificates, would

cause UHG to suffer irreparable injury, loss of goodwill, harm to its business, and other injury

and damages for which money damages alone would be inadequate to compensate UHG.

23.     UHG takes multiple steps to protect its confidential and proprietary

information and trade secrets, including, without limitation by having its employees, including

Mr. MacDonald, execute and otherwise agree to confidentiality agreements, such as those contained in the Option Certificates.

24.     As more specifically described below, Mr. MacDonald agreed on multiple other occasions not to compete with UHG following the termination of his employment with UHG, and also agreed on multiple occasions to safeguard the confidential, proprietary and trade secret information he learned while employed with UHG.  UHG has not released him from these obligations or otherwise provided him with consent to disclose any sensitive information.

### C.     Mr. MacDonald's Option Certificates.

25.     In each year from 2003 through 2006, Mr. MacDonald received stock option grants and/or stock appreciation rights from UHG pursuant to the Option Certificates, *see* Exhibit A, which UHG issued pursuant to the Plan, *see* Exhibit B.  The Plan provides that "[t]he validity, construction and effect of the Plan and any rules and regulations relating to the Plan shall be determined in accordance with the laws of the State of Minnesota."  Exhibit B, Section 9(e).

26.     To date, Mr. MacDonald has received more than $170,000 in gains from his exercise of the options granted under the Option Certificates, and he now holds vested and exercisable options on over 5,000 shares of UHG stock that have a current potential gain of more than $70,000.

27.     Each of the Option Certificates contains an agreement that Mr. MacDonald refrain from competing with UHG for a one year period after the termination of his employment.  Specifically, each Option Certificate provides:

> Competitive Activity.  During the Optionee's employment with the Company and for the greater of one year after the termination of the Optionee's employment for any reason whatsoever (including Retirement) or the period of time for which the option remains

exercisable, the Optionee shall not engage in any Competitive Activity.  For purposes of this Agreement the term "Competitive Activity" shall mean any activities that are competitive with the businesses conducted by the Company or its subsidiaries at or prior to the date of the termination of the Optionee's employment, all as described in the Company's periodic reports filed pursuant to the Securities Exchange Act of 1934 (e.g., the Company's Annual Report on Form 10-K) or other comparable publicly disseminated information.  Because the Company's business competes on a nationwide basis, the Optionee's obligations hereunder shall supply anywhere in the United States of America.

28.     The Option Certificates also contain an acknowledgement that Mr. MacDonald will receive "sensitive, confidential, proprietary, and/or trade secret information" during the course of his employment and an agreement not to disclose such information. Specifically, the Option Certificates each provide:

> Proprietary Information.  During the course of employment, the Optionee will receive sensitive, confidential, proprietary and/or trade secret information (collectively, "Proprietary Information"), including, without limitation, information regarding inventions, new product or marketing plans, business strategies, merger and acquisition targets, financial and pricing information, computer programs, models and data bases (including limitation source codes), designs, analytical models, customer lists and information, and supplier and vendor lists and information.  This Proprietary Information includes not only information contained in written or digital Company documents but also all such information which Optionee may commit to memory during the course of the Optionee's job.  It is the Optionee's responsibility to protect the integrity and confidential nature of this Proprietary Information, both during and after the Optionee's employment with the Company, and the Optionee shall not disclose any such Proprietary Information, either during or after the terms of the Optionee's employment, except as necessary for the performance of the Optionee's duties or as expressly permitted in writing by UnitedHealth Group.

29.     The Option Certificates also contain Mr. MacDonald's agreement that the "restrictions and agreements contained in the[] Restrictive Covenants section are reasonable and necessary to protect the legitimate interests of the Company [UHG]."

30.     The Option Certificates further provide that if Mr. MacDonald violates any provision of the restrictive covenants or confidentiality provisions contained therein, he shall forfeit all unvested options in addition to any options that vested within one year prior to the termination of his employment.

31.     Mr. MacDonald's employment with WellCare has caused him to violate these provisions of the Option Certificates.

**D.     Mr. MacDonald's Employment with WellCare.**

32.     On April 23, 2007, Mr. MacDonald announced his resignation from his position at UHG, effective May 11, 2007.

33.     At that time, Mr. MacDonald expressed his intention to become employed by WellCare as the Associate Executive Director for WellCare in Orlando, a high-level strategic position managing WellCare's network, immediately after his resignation became effective. WellCare is one of UHG's direct competitors. Ovations's Secure Horizons business unit competes directly with WellCare's Medicare Advantage business and AmeriChoice competes directly with WellCare in the Medicaid market, including but not limited to in Orlando and other parts of Florida.

34.     Based upon Mr. MacDonald's statements to UHG, in his position at WellCare, Mr. MacDonald has overall business management responsibility for WellCare's Medicare Advantage business in the Orlando area and potentially other areas in Florida (and beyond). In this role, Mr. MacDonald would have to be directly involved with the development and management of the underlying provider network used by WellCare's Medicare Advantage customers. In its recent filings with the United States Securities and Exchange Commission, WellCare has referred to its provider network as a competitive advantage and as one of its

important business risks.  In his role at UHG, Mr. MacDonald received confidential information relating to quality improvement strategies and plans, which will be directly relevant to his role at WellCare, and which he could not help but use to UHG's and UHN's detriment.

35.     Mr. MacDonald's association and employment with WellCare will, therefore, result in the disclosure or use of UHG's highly valuable confidential, proprietary and trade secret information that he learned while employed at UHG, resulting in far-reaching irreparable harm to UHG.

36.     Prior to the commencement of his employment at WellCare, UHG notified Mr. MacDonald that his proposed employment with WellCare would violate the terms of the Option Certificates and his obligations under common law.  Mr. MacDonald nonetheless proceeded with his employment at WellCare on May 17, 2007, immediately following the effective date of his resignation from UHG.

### Conditions Precedent

37.     All conditions precedent to the filing of this action have occurred, have been waived or have been satisfied.

### FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

38.     UHG repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 37 of this Complaint as if fully set forth in this claim for relief.

39.     UHG contends that the Option Certificates preclude Mr. MacDonald's employment with WellCare.

40.     UHG further contends that Mr. MacDonald cannot undertake his current employment with WellCare without disclosing UHG's confidential, proprietary and trade secret information, in derogation of his obligations under the Option Certificates and applicable law.

41.     Mr. MacDonald, however, joined WellCare in a similar position to which he held at UHG and which will, upon information and belief, cause him to disclose UHG's confidential, proprietary and trade secret information.

42.     Accordingly, an actual controversy exists between UHG and Mr. MacDonald regarding the enforceability of the restrictive covenants and the confidentiality agreements contained in the Option Certificates, as well as Mr. MacDonald's obligations under applicable law.  UHG desires a judicial determination and a declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract Against Mr. MacDonald)

43.     UHG repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 42 of this Complaint as if fully set forth in this claim for relief.

44.     In each year from 2003 through 2006, Mr. MacDonald has received nonqualified options to receive grants of UHG common stock and/or stock appreciation rights that UHG granted pursuant to the Option Certificates, and which UHG issued pursuant to the Plan.

45.     Each Option Certificate contains an agreement that Mr. MacDonald refrain from competing with UHG for a one year period after the termination of his employment.

46.     Each Option Certificate also contains an acknowledgement that Mr. MacDonald will receive "sensitive, confidential, proprietary, and/or trade secret information" during the course of his employment and an agreement not to disclose such information.

47.     UHG relied on Mr. MacDonald's promises, and, as a result, provided him with good and valuable consideration under the terms of the Plan and the Option Certificates, including options under which he already has realized over $170,000 in gains, as well as proprietary and trade secret information, as more fully described above.

48.     Mr. MacDonald accepted the benefits of the Option Certificates and UHG fully performed its obligations under the Option Certificates.

49.     Mr. MacDonald breached the Option Certificates by becoming employed by WellCare immediately after the effective date of his resignation from UHG.

50.     By accepting employment with WellCare, a direct competitor of UHG, Mr. MacDonald either has utilized and/or disclosed, or necessarily will be called upon to utilize and/or disclose, UHG's confidential and proprietary information and trade secrets for WellCare's benefit and, thus, has or will further breach his Option Certificates with UHG.

51.     As a direct and proximate result of Mr. MacDonald's breach of the Option Certificates, UHG has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.  UHG will continue to suffer this harm unless and until Mr. MacDonald is restrained from his current conduct and is compelled to abide by the terms of his Option Certificates.

52.     As a direct and proximate result of Mr. MacDonald's breach of the Option Certificates, UHG has suffered and will continue to suffer additional damages, which continue to

accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF
**(Breach of Fiduciary Duty Against Mr. MacDonald)**

53.    UHG repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 52 of this Complaint as if fully set forth in this claim for relief.

54.    By virtue of his position at UHG, the special relationship of trust and confidence reposed by UHG in him, and the access provided to him to UHG's confidential, proprietary and trade secret information, Mr. MacDonald was required to act solely for UHG's interest. Mr. MacDonald also had duties of loyalty and of utmost good faith to UHG and was obligated not to subvert or misappropriate UHG's confidential and trade secret information, assets, business, or business opportunities.

55.    Upon information and belief, Mr. MacDonald has breached his fiduciary duties to UHG by disclosing information related to UHG through his association with WellCare, as well as by agreeing to enter its employ, despite expressly promising not to compete against UHG. Mr. MacDonald will also necessarily continue to breach his fiduciary duties by disclosing UHG's confidential, proprietary and trade secret information should he continue to be employed by WellCare.

56.    By Mr. MacDonald's breach and threatened continued breach of fiduciary duties, UHG has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law. UHG will continue to suffer this harm unless and until Mr. MacDonald is restrained from taking further actions which breach of his fiduciary duties to UHG.

57.     As a direct and proximate result of Mr. MacDonald's breach of fiduciary duties, UHG has suffered and will continue to suffer additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proved at trial.

58.     Mr. MacDonald committed his actions knowingly, willfully and in conscious disregard of UHG's rights.  Accordingly, UHG is entitled to recover actual and exemplary damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### (Tortious Interference with Contract and Unfair Competition Against WellCare)

59.     UHG repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 58 of this Complaint as if fully set forth in this claim for relief.

60.     The Option Certificates constitute binding contracts between UHG and Mr. MacDonald.

61.     WellCare had or should have had knowledge of the Option Certificates and their terms, including that Mr. MacDonald was bound by the restrictive covenants and confidentiality obligations contained in the Option Certificates.

62.     WellCare knowingly and intentionally, and without privilege, interfered with the Option Certificates by persuading Mr. MacDonald to compete against UHG by being employed by WellCare, in breach of the Option Certificates.

63.     By interfering with the Option Certificates, WellCare engaged in unfair competition.

64.     As a result of WellCare's conduct, UHG has been damaged in an amount to be determined at trial, but which cannot fully be compensated by money alone.

65.     WellCare's actions were committed knowingly, willfully and in conscious disregard of UHG's contractual rights.  Accordingly, UHG is entitled to recover actual and exemplary damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Against WellCare)

66.     UHG repeats and realleges paragraphs 1 through 65 and incorporates them herein by reference.

67.     At all relevant times, Mr. MacDonald owed UHG fiduciary duties.

68.     Mr. MacDonald has breached his fiduciary duties to UHG.

69.     WellCare was aware of Mr. MacDonald's contractual and fiduciary obligations to UHG.

70.     WellCare substantially assisted and otherwise knowingly and willfully participated in Mr. MacDonald's breach of fiduciary duties by, among other things, tortiously inducing, encouraging and otherwise aiding-and-abetting Mr. MacDonald's breaches of fiduciary duty to UHG.

71.     As a direct result of Defendants' wrongdoing, UHG has been damaged in an amount to be determined at trial, but which cannot fully be compensated by money alone.

72.     Mr. MacDonald's and WellCare's actions were committed knowingly, willfully and in conscious disregard of UHG's contractual and fiduciary rights.  Accordingly, UHG is entitled to recover actual and exemplary damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
**(Misappropriation of Trade Secrets and Inevitable Disclosure of Trade Secrets and Confidential Information Against Mr. MacDonald and WellCare)**

73.     UHG repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 72 of this Complaint as if fully set forth in this claim for relief.

74.     As a result of his employment with UHG and his acceptance of nonqualified options to UHG common stock and stock appreciation rights, including the restrictive covenants and confidentiality provisions contained in the Option Certificates, Mr. MacDonald developed, used, received and had knowledge of UHG's and UHN's confidential, proprietary and trade secret information.

75.     The confidential and proprietary information and trade secrets have independent economic value and were not generally known to or readily ascertainable by persons other than UHG.

76.     UHG has made and continues to make reasonable efforts to maintain the secrecy of the confidential and proprietary information and trade secrets.

77.     Upon information and belief, Mr. MacDonald threatens to disclose and/or use UHG's trade secrets, or has already done so, without the express or implied consent of UHG, for his own benefit and the benefit of WellCare, and WellCare has used or threatens to use such trade secrets which were improperly disclosed and/or used by Mr. MacDonald.  Such a use constitutes a violation of Minnesota Statute §325C.01 et seq.

78.     As a direct and proximate result of the threatened and/or actual misappropriation of trade secrets and confidential and proprietary information by Mr. MacDonald and WellCare, UHG has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no

adequate remedy at law.  UHG will suffer this harm unless and until Mr. MacDonald is restrained from his current and intended conduct.

79.     As a direct and proximate result of Defendants' threatened and/or actual misappropriation of trade secrets and confidential and proprietary information, UHG has suffered and will continue to suffer additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proved at trial.

## EIGHTH CLAIM FOR RELIEF
### (Unfair Competition Against Mr. MacDonald)

80.     UHG repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 79 of this Complaint as if fully set forth in this claim for relief.

81.     By willfully threatening to breach his contractual obligations and fiduciary duties to UHG and by misappropriating UHG's confidential and proprietary information and competitive advantage, Mr. MacDonald has acted in bad faith and is engaged and is continuing to engage in unfair competition against UHG.

82.     Such actions constitute unfair and deceptive trade practices and unfair competition.

83.     As a direct and proximate result of Mr. MacDonald's unfair and deceptive trade practices and unfair competition, UHG has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.  UHG will suffer this harm unless and until Mr. MacDonald is restrained from his current and intended conduct.

84.     As a direct and proximate result of Mr. MacDonald's unfair and deceptive trade practices and unfair competition, UHG has suffered and will continue to suffer additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and lost business in an amount to be proved at trial.

85.     Mr. MacDonald committed his actions knowingly, willfully and in conscious disregard of UHG's rights. Accordingly, UHG is entitled to recover actual and exemplary damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF
### (Constructive Trust Against Mr. MacDonald)

86.     UHG repeats, re-alleges, and incorporates by reference the allegations contained in paragraphs 1 through 85 of this Complaint as if fully set forth in this claim for relief.

87.     By his inequitable conduct, as described above, Mr. MacDonald is in the position to wrongfully obtain an amount in excess of $70,000 in gains should he exercise UHG stock options that currently are vested.

88.     Mr. MacDonald's acceptance of that consideration and benefit, without providing UHG the benefit of its bargain, would cause damage to UHG. Moreover, Mr. MacDonald would be unjustly enriched if he were allowed to obtain and retain those financial gains despite his failure to comply with his obligations under the Option Certificates.

89.     Because Mr. MacDonald would be unjustly enriched by his own wrongdoing if he were to realize the gains from his vested and exercisable options, equity should impose a duty on Mr. MacDonald and the Court should impose a constructive trust thereon.

**WHEREFORE**, UHG respectfully requests that the Court:

A.     Enter a judgment declaring that Mr. MacDonald's Option Certificates are valid and enforceable and that his proposed employment with WellCare violates the Option Certificates;

B.     Enter a judgment declaring that Mr. MacDonald owes UHG obligations to safeguard its confidential, proprietary and trade secret information and that he cannot adequately safeguard such information if he is employed by WellCare;

C.     Enter a temporary restraining order, a preliminary injunction, and a permanent injunction restraining Mr. MacDonald, and any person in active concert or participation with him, from continuing employment in a comparable position, assuming or performing any duties for WellCare, one of UHG's direct competitors in the State of Florida, or participating in any other activities that are unfairly competitive with UHG, in violation of the restrictive covenants contained in the Option Certificates;

D.     Enter a temporary restraining order, a preliminary injunction, and a permanent injunction restraining Mr. MacDonald, and any person in active concert or participation with him, from using or disclosing UHG's trade secrets and proprietary information to WellCare, any other competitor of UHG or any third party;

E.     Enter a temporary restraining order, a preliminary injunction, and a permanent injunction restraining WellCare from employing Mr. MacDonald and engaging in unfair competition in violation of the restrictive covenants contained in the Option Certificates; and

(b)     Enter a temporary restraining order, a preliminary injunction, and a permanent injunction preventing WellCare using, disclosing, transferring, or communicating in

any manner any confidential, proprietary, or trade secret information that Mr. MacDonald

obtained through his employment with UHG.

       E.      Enter a judgment granting UHG direct and consequential damages related

to business lost as a result of any breach or anticipated breach of the Option Certificates or

related to any loss caused by Mr. MacDonald's actual or threatened misappropriation or

disclosure of UHG's confidential, proprietary or trade secret information;

       F.      Enter a judgment granting UHG exemplary damages;

       G.      Enter a judgment awarding UHG its costs and disbursements and

attorneys' fees.

       H.      Grant to UHG such other and further relief as the Court deems just and

appropriate.

Dated: May 24, 2007

Respectfully submitted,

*Edward Soto*

Edward Soto (FBN 265144)
edward.soto@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida  33131
Tel:    (305) 577-3100
Fax:    (305) 374-7159

Jeffrey Klein, Esq.
jeffrey.klein@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 5th Avenue
New York, New York  10153
Tel:    (212) 310-8000
Fax:    (212) 310-8007

**Attorneys for Plaintiffs UnitedHealth Group
Incorporated and United HealthCare Services,
Inc.**